17-2290-cv
Islamic Community Center for Mid Westchester v. City of Yonkers Landmark Preservation Board

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York on the 6th day of July, two thousand eighteen.

Present:     ROSEMARY S. POOLER,
             REENA RAGGI,
             PETER W. HALL,
                     *Circuit Judges*.

─────────────────────────────────────────────────

ISLAMIC COMMUNITY CENTER FOR MID WESTCHESTER, MOHAMMED ZUBER NAKADAR, OMAR OCKEH, SYED KAMAL, ALI NAWAZUDDIN, MOHAMMED SOHAIL, ALI EL-OUSROUTI, FAVZUL KABEER, MOHAMMED RAHEEM, ARSHAD SHARIFF, ISMET JASHARI,

                     *Plaintiffs-Appellants*,

                     v.                                    17-2290-cv

CITY OF YONKERS LANDMARK PRESERVATION BOARD, CITY OF YONKERS PLANNING BUREAU, AKA CITY OF YONKERS PLANNING BOARD, CITY OF YONKERS, MAYOR MICHAEL SPANO, IN HIS OFFICIAL CAPACITY AS MAYOR OF THE CITY OF YONKERS, LIAM J. MCLAUGHLIN, IN THEIR OFFICIAL CAPACITY AS MEMBERS OF THE CITY OF YONKERS CITY COUNCIL, DENNIS SHEPHERD, IN THEIR OFFICIAL CAPACITY AS MEMBERS OF THE CITY OF YONKERS CITY COUNCIL, MIKE BREEN, IN THEIR OFFICIAL CAPACITY AS MEMBERS OF THE CITY OF YONKERS CITY COUNCIL, JOHN LARKIN, IN THEIR OFFICIAL CAPACITY AS MEMBERS OF THE CITY OF YONKERS CITY COUNCIL, GORDON A. BURROWS, IN THEIR OFFICIAL CAPACITY AS A DISTRICT COUNTY LEGISLATOR IN THE CITY OF YONKERS,

                     *Defendants-Appellees*.

Appearing for Appellant:     Omar T. Mohammedi, New York, N.Y.

Appearing for Appellee:      Patrick A. Knowles, Feerick Lynch MacCartney & Nugent, PLLC
                             (Dennis E.A. Lynch, Mary E. Brady Marzolla, *on the brief*), South
                             Nyack, N.Y.

Appeal from the United States District Court for the Southern District of New York (Briccetti, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order and judgment of said District Court be and hereby are **AFFIRMED**.

Appellant Islamic Community Center for Mid Westchester ("ICCMW") appeals from the June 28, 2017 opinion and order and the June 30, 2017 judgment of the United States District Court for the Southern District of New York (Briccetti, *J.*), dismissing without prejudice ICCMW's complaint and denying ICCMW's motions for leave to file a supplemental complaint and a preliminary injunction. We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

In April 2013, ICCMW identified a piece of property located in Yonkers, New York that it wished to purchase for use as a mosque. The property had fallen into a state of disrepair, however, and ICCMW was not able to close on the purchase until March 2015. In the intervening period, ICCMW met with local officials to confirm that they could use the property as a mosque. Yonkers city officials confirmed that the property was zoned for use either as a residence or a house of worship.

Several months after ICCMW closed on the property purchase, the group became aware that a different local organization—Colonial Heights Association of Tax Payers—had filed an application to designate the property as a landmark. In order to receive a landmark designation in the City of Yonkers, a property must possess one of several enumerated characteristics. *See* City of Yonkers Landmark Ordinance, § 45-2; App'x at 223. The proposed designation must also be considered by several elected bodies before it is approved by the City. *Id.*

Accordingly, after initial consideration by the Landmark Preservation Board on November 4, 2015, the application made the rounds to several other committees, before being approved by the City Council on May 24, 2016. On May 27, 2016, the Mayor signed the resolution designating the property as a landmark.

Four months later, ICCMW filed this lawsuit in federal district court challenging the landmark designation on several grounds, including allegations that the designation violated ICCMW's First Amendment right to the free exercise of religion, as well as several claims under the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc. On June 28, 2017, the district court dismissed the complaint for want of subject-matter jurisdiction,

2

finding the case was not yet ripe because ICCMW had not yet complied with the "final-decision requirement." Special App'x at 15. On July 25, 2017, ICCMW timely appealed.

We engage in de novo review of a district court's dismissal under Fed. R. Civ. P. 12(b)(1) and its determination that an issue is not yet ripe. *Sunrise Detox V, LLC v. City of White Plains*, 769 F.3d 118, 121 (2d Cir. 2014). "Ripeness is a jurisdictional inquiry," such that we are obligated to "presume that we cannot entertain [ICCMW's] claims unless the contrary appears affirmatively from the record." *Murphy v. New Milford Zoning Commission*, 402 F.3d 342, 347 (2d Cir. 2005) (internal quotation marks omitted). We have previously described this as a "high burden" for landowners to meet, requiring owners to prove that "we can look to a final, definitive position from a local authority to assess precisely how they can use their property." *Id*. Further, we must determine the ripeness of the case at the very outset of our analysis, because "[r]ipeness is a constitutional prerequisite to exercise of jurisdiction by federal courts," so essential that we may "raise the issue sua sponte." *Nutritional Health Alliance v. Shalala*, 144 F.3d 220, 225 (2d Cir. 1998).

ICCMW challenges the district court's use of the ripeness analysis in *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), arguing that the district court erred by not engaging in a traditional ripeness analysis. The district court did not err on this question of law.

Traditionally, courts have assessed whether a case is ripe for adjudication by engaging in a "two-prong inquiry," *Murphy*, 402 F.3d at 347, regarding both the "fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration," *id*. (citation omitted). In *Williamson County*, the Supreme Court articulated a similar, but distinct test for cases arising in the context of takings challenges to land use regulations. The Court in that case held:

> [A] claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue.

*Williamson County*, 473 U.S. at 186.[1] Since *Williamson County*, this Circuit has applied its ripeness test to land use challenges far afield from the takings context. As this Court previously explained:

> Although *Williamson County* involved a challenge to a regulatory taking, the final-decision requirement has not been so strictly confined. We have previously extended the final-decision requirement to zoning challenges based on substantive due process, First Amendment rights of assembly and free exercise; the Religious Land Use and

---

[1] In step two, the *Williamson County* Court also required petitioners to "seek compensation through the procedures the State has provided for doing so," but that prong of the test is not relevant in this non-takings case. *Id*. at 194.

3

Institutionalized Persons Act of 2000 ("RLUIPA") . . . and a state analogue to RLUIPA .
. . ."

*Sunrise Detox*, 769 F.3d at 122 (internal citations and quotation marks omitted). In *Sunrise Detox* this Court explained that it "decline[d] to adopt a categorical rule excepting from the final-decision requirement any case in which a landowner alleges intentional discrimination." *Id*. Instead, it determined that "a plaintiff alleging discrimination in the context of a land use dispute is subject to the final-decision requirement unless he can show that he suffered some injury independent of the challenged land-use decision." *Id*. at 123. We also observed that "the finality requirement is not mechanically applied" and will not be found to bar a suit when further appeals would be futile or when the relevant town board "sits purely as a remedial body."[2] *Murphy*, 402 F.3d at 349; *see also Sunrise Detox*, 769 F.3d at 124 (recognizing, but declining to apply, the futility exception to the prong-one final-decision requirement); *Williamson County*, 473 U.S. at 193 ("[R]espondent would not be required to resort to those procedures before bringing its . . . action, because those procedures clearly are remedial"). In sum, as the *Murphy* Court explains, "absent a futility or remedial finding, prong-one ripeness reflects the judicial insistence that a federal court know precisely how a property owner may use his land before attempts are made to adjudicate the constitutionality of regulations purporting to limit such use." *Id*. at 349.

Application of the *Williamson County* ripeness inquiry makes clear that this case is not yet ripe. This Court must engage in a "fact-sensitive inquiry," *Murphy*, 402 F.3d at 350, while remaining mindful of the important rationales underlying our ripeness inquiries. The *Murphy* Court articulated four reasons for *Williamson County*'s prong-one ripeness inquiry (i.e., the final-decision requirement): this requirement 1) "aids in the development of a full record," 2) enables the court to "know precisely how a regulation will be applied to a particular parcel," 3) may enable resolution of the case on "non-constitutional grounds," which we prefer whenever possible, and 4) reflects our adherence to federalism, because "land use disputes are uniquely matters of local concerns more aptly suited for local resolution." *Id*. at 348. In short, "a non-final decision on how a parcel of land may be used does not ordinarily give rise to an injury that is sufficiently concrete and particularized to satisfy Article III." *Sunrise Detox*, 769 F.3d at 122.

The district court held this case was not ripe because ICCMW failed to apply for the "certificate of appropriateness" that would, if granted, enable them to pursue their construction projects despite the landmark designation. Special App'x at 15. ICCMW argues that applying for a certificate of appropriateness would have no bearing on the alleged harm, because "this process cannot reverse or amend the landmark designation." Appellant's Br. at 36. "In fact, the Certificate of Appropriateness process is the harm caused to Appellants—it is an additional burden that ICCMW must now overcome given the discriminatory landmark designation." *Id*. Yet ICCMW seems to unwittingly reflect the very rationales underlining the final-decision rule articulated in *Williamson County*, because at no point in its briefing was it clear exactly how the

---

[2] ICCMW also attempts to avoid the *Williamson County* final-decision rule by arguing that it is raising a facial challenge to the rule, rather than an as-applied challenge. The district court was not persuaded by this argument, finding that "[e]ven a cursory review of the complaint and plaintiffs' arguments reveals that plaintiffs are challenging the application of the Landmark Law to them. Such challenges are plainly as-applied challenges." Special App'x at 14. We agree with the district court.

landmark designation impacted its ability to use its property, let alone how the designation substantially burdened its ability to practice its religious faith. The final-decision rule is designed to aid courts in understanding exactly how a litigant is being harmed by a land use designation, and to prevent litigants from rushing into federal courts when the harm could be avoided through a local process. ICCMW's failure to attain a final decision on its application by availing itself of the local procedure that could remedy its alleged harm—whatever that may be, since none has yet been articulated—bars it from litigating this claim in federal court.

ICCMW's motion for leave to file an amended complaint fares no better. The district court dismissed that motion under Fed. R. Civ. P. 12(b)(1), determining that principles of comity and the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341, barred it from entertaining the claim. Special App'x at 10. The City further argues that the claim is moot in any event because the alleged harm—the City's revocation of ICCMW's tax-exempt status—was rendered moot by a review board's decision to reinstate the status. We need not reach either the TIA or mootness arguments, because we hold that the district court was correct to dismiss the claim for want of jurisdiction in deference to principles of comity. *See Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 432 (2010) ("Because we conclude that the comity doctrine justifies dismissal of respondents' federal-court action, we need not decide whether the TIA would itself block the suit."); *Fair Assessment in Real Estate Association, Inc. v. McNary*, 454 U.S. 100, 107 (1981) ("Because we decide today that the principle of comity bars federal courts from granting damages relief in [Section 1983] cases, we do not decide whether [TIA], standing alone, would require such a result."). In short, the Supreme Court has expressly articulated the holding that the principle of comity bars Section 1983 actions premised on decisions by local taxing authorities. *See McNary*, 560 U.S. at 105 ("We hold that . . . as to [Section 1983] actions . . . the principle of comity controls").

We acknowledge the troubling reports of ICCMW regarding anti-Muslim animus expressed by some members of the surrounding community and we express no view on whether those accounts may be sufficient to raise a successful claim after ICCMW has received a final decision on its application for a certificate of appropriateness. We do express concern with the presentation of the factual and legal arguments in ICCMW's briefing, which we found to be concerningly misleading.

We have considered the remainder of ICCMW's arguments and find them to be without merit. Accordingly, the order of the district court hereby is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

5